1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA ANDERSON, | ) Case No. CV 09-7740 JCG |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**I.**

## INTRODUCTION AND SUMMARY

On October 27, 2009, plaintiff Paula Anderson ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant" or "Commissioner"), seeking review of a denial of supplemental security income benefits ("SSI") and disabled widow's benefits. [Docket No. 3.]

On March 5, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 11, 12, 13.]

Pursuant to a October 28, 2009 order regarding further proceedings, Plaintiff submitted a brief in support of her complaint ("Pl.'s Br.") on April 7, 2010. [Docket No. 14.] On May 6, 2010, Defendant submitted his opposition brief ("Def's. Br."). [Docket No. 18.]

1    On April 14, 2010, this matter was transferred to the calendar of the

2 undersigned Magistrate Judge.  [Docket No. 15.]  Both Plaintiff and Defendant

3 subsequently consented to proceed for all purposes before the Magistrate Judge

4 pursuant to 28 U.S.C. § 636(c).  [Docket Nos. 16, 19.]

5    Plaintiff did not file a reply brief.  The Court deems the matter suitable for

6 adjudication without oral argument.

7    In sum, having carefully studied, *inter alia*, the parties' written submissions

8 and the administrative record, the Court concludes that, as detailed below, the

9 Administrative Law Judge ("ALJ") erred in his evaluation of the opinion of

10 Plaintiff's treating physicians.  It is well established that the ALJ may discount the

11 opinion of treating physicians, *but* he must articulate specific and legitimate reasons

12 in so doing.  Those requisite reasons are absent here.  The Court thus remands this

13 matter to the Commissioner in accordance with the principles and instructions

14 enunciated in this Memorandum Opinion and Order.

15                                    **II.**

16              **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

17    Plaintiff, who was 50 years of age on the date of her administrative hearing,

18 has completed the eleventh grade.  (Administrative Record ("AR") at 82, 367, 370.)

19 Plaintiff has no past relevant work.  (*Id.* at 24, 36.)

20    Plaintiff filed for SSI on March 26, 2008, alleging that she has been disabled

21 since January 1, 2007 due to tremors, neck pain, a knee and leg impairment, and

22 depression.  (*See* AR at 69, 75, 82-85.)  Plaintiff's application was denied initially

23 and upon reconsideration, after which she filed a timely request for a hearing.  (*Id.* at

24 60, 62-66, 69-73, 75-79.)  On or about the time she filed her request for a hearing,

25 Plaintiff also filed a claim for disabled widow's benefits.  (*See id.* at 18; Def.'s Br. at

26 2.)

27    On May 14, 2009, Plaintiff, represented by counsel, appeared and testified at a

28 hearing before an ALJ.  (AR at 367-76.)

1    On August 3, 2009, the ALJ denied Plaintiff's request for SSI benefits.  (AR
2    at 30-37.)  Two days later, on August 5, 2009, the ALJ denied Plaintiff's request for
3    disabled widow's benefits.  (*Id.* at 18-26.)  The relevant findings with respect to the
4    five-step sequential evaluation process – which is discussed below – in both
5    decisions are identical.  (*Compare* AR at 18-26 *with id.* at 30-37.)

6    Applying the five-step sequential evaluation process, the ALJ found, at step
7    one, that Plaintiff has not engaged in substantial gainful activity since her SSI
8    application date.  (AR at 20, 32.)

9    At step two, the ALJ found that Plaintiff suffers from severe impairments
10   consisting of "degenerative joint disease, tremors, [and] left hip pain."  (AR at 20, 32
11   (emphasis omitted).)

12   At step three, the ALJ determined that the evidence does not demonstrate that
13   Plaintiff's impairment, either individually or in combination, meet or medically
14   equal the severity of any listing set forth in the Social Security regulations.[1]  (AR at
15   21, 33.)

16   The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and
17   determined that she can "perform the full range of medium work[,]" but is limited to
18   "occasional[] walk[ing] on uneven terrain and climb[ing] ladders."  (AR at 22, 33
19   (emphasis omitted).)

20   The ALJ found, at step four, that Plaintiff has no past relevant work.  (AR at
21   24, 36.)

22

23   [1]    *See* 20 C.F.R. pt. 404, subpt. P, app. 1.
24

25   [2]    Residual functional capacity is what a claimant can still do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155
26   n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
     ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's
27   residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th
28   Cir. 2007).

3

1   At step five, based on Plaintiff's vocational factors and RFC, the ALJ found
2   that "there are jobs that exist in significant numbers in the national economy that
3   [Plaintiff] can perform[.]"  (AR at 25, 36 (emphasis omitted).)  Thus, the ALJ
4   concluded that Plaintiff was not suffering from a disability as defined by the Act.
5   (*Id.* at 19, 25, 30, 37.)

6   Plaintiff filed a timely request for review of the ALJ's decisions, which was
7   denied by the Appeals Council.  (AR at 5-7, 9.)  The ALJ's decisions stand as the
8   final decision of the Commissioner.

### III.

### APPLICABLE LEGAL STANDARDS

A.   Five-Step Inquiry to Ascertain a Cognizable Disability

12   A claimant must satisfy three fundamental elements to be eligible for
13   disability benefits:  (1) a medically-determinable impairment; (2) the impairment
14   prevents the claimant from engaging in substantial gainful activity; and (3) the
15   impairment is expected to result in death or to last for a continuous period of at least
16   12 months.  42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th
17   Cir. 1999).  A well-established five-step sequential inquiry is utilized to assess
18   whether a particular claimant satisfies these three elements.  The inquiry proceeds as
19   follows:

20   First, is the claimant engaging in substantial gainful activity?  If so, the
21   claimant cannot be considered disabled.

22   Second, does the claimant suffer from a "severe" impairment, *to wit*, one
23   continuously lasting at least 12 months?  If not, the claimant is not disabled.

24   Third, does the claimant's impairment or combination of impairments meet or
25   equal an impairment specifically identified as a disability by the Commissioner
26   under 20 C.F.R. part 404, subpart P, appendix 1?  If so, the claimant is automatically
27   determined to be disabled.

28   Fourth, is the claimant capable of performing his past work?  If so, the

1    claimant is not disabled.

2        **Fifth**, does the claimant have the so-called "residual functional capacity" to

3    perform some other type of work?   The critical question posed here is whether the

4    claimant can, in light of the impairment and his or her age, education and work

5    experience, adjust to another form of gainful employment?

6        If a claimant is found "disabled" or "not disabled" along any of these steps,

7    there is no need to complete the remaining inquiry.   20 C.F.R. §§ 404.1520(a)(4) &

8    416.920(a)(4); *Tackett*, 180 F.3d at 1098-99.

9        B.    <u>Standard of Review on Appeal</u>

10       This Court is empowered to review decisions by the Commissioner to deny

11   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

12   Administration must be upheld if they are free of legal error and supported by

13   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*

14   *amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings

15   are based on legal error or are not supported by substantial evidence in the record,

16   the court may reject the findings and set aside the decision to deny benefits.

17   *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,

18   242 F.3d 1144, 1147 (9th Cir. 2001).

19       "Substantial evidence is more than a mere scintilla, but less than a

20   preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant

21   evidence which a reasonable person might accept as adequate to support a

22   conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d

23   at 459.  To determine whether substantial evidence supports the ALJ's finding, the

24   reviewing court must review the administrative record as a whole, "weighing both

25   the evidence that supports and the evidence that detracts from the ALJ's

26   conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed

27   simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d

28   at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the

1  evidence can reasonably support either affirming or reversing the ALJ's decision,

2  the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.*

3  (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

4                                             **IV.**

5                                  **ISSUE PRESENTED**

6           A single disputed issue is presented here:  whether the ALJ properly evaluated

7  the opinion of Plaintiff's treating physicians, in particular, with respect to a

8  prescription for a "cane for ambulation" and a "hinged knee brace."  (Pl.'s Br. at 5-

9  9.)

10                                            **V.**

11                           **DISCUSSION AND ANALYSIS**

12          Plaintiff, on the one hand, contends that the ALJ "rejected [Plaintiff's] use of

13  a cane and knee brace to ambulate as of September 2008 because, in the ALJ's

14  opinion, it was not supported by the medical record."  (*See* Pl.'s Br. at 6.)  Plaintiff

15  argues that "[i]n doing so, the ALJ relied on the April 2008 [opinion of an

16  examining physician] and ignored the treating opinion issued in September 2008."

17  (*Id.*)

18          Plaintiff also explains that while the examining physician's opinion "may

19  have been valid as of April 2008, the fact that [Plaintiff's] condition worsened and

20  her treating physicians determined that use of a cane and knee brace was medically

21  necessary as of September 2008 is uncontradicted in the record."  (Pl.'s Br. at 6

22  (footnote omitted).)  Plaintiff further contends that the ALJ mistakenly "applied the

23  Commissioner's Medical-Vocational Guidelines in finding that alternative work was

24  available to [Plaintiff because the] . . . grids are used only in instances when they

25  accurately describe the claimant's abilities and limitations."  (*Id.* at 8.)

26          On the other hand, Defendant argues that "substantial evidence supported the

27  ALJ's conclusion that Plaintiff could perform medium exertional work, with two

28  minor limitations, and that she was not disabled pursuant to the grids."  (Def.'s Br. at

1   2.)  Defendant claims that:

2        (1) the "ALJ recognized that Plaintiff had been prescribed a cane, but

3   correctly noted that the objective evidence indicated only mild problems";

4        (2) "the medical record does not support Plaintiff's assertion that any doctor

5   determined that she could not walk at all without the cane or that she needed to use it

6   constantly"; and

7        (3) "Plaintiff's daily activities contradict this assertion."  (*Id.*)

8        Defendant contends that, in any event, "Plaintiff would not have been disabled

9   even had she been capable of only sedentary or light work."  (Def.'s Br. at 2.)

10       A.    Evaluation of Medical Evidence

11       In evaluating medical opinions, Ninth Circuit case law and Social Security

12  regulations distinguish among the opinions of three types of physicians:

13       (1) those who treat the claimant (treating physicians);

14       (2) those who examine but do not treat the claimant (examining physicians);

15  and

16       (3) those who neither examine nor treat the claimant (nonexamining

17  physicians).

18  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, *as amended* April 9, 1996); *see*

19  *also* 20 C.F.R. §§ 404.1527(d) & 416.927(d) (prescribing the respective weight to be

20  given the opinion of treating sources and examining sources).

21       "As a general rule, more weight should be given to the opinion of a treating

22  source than to the opinion of doctors who do not treat the claimant."  *Lester*, 81 F.3d

23  at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir.

24  2003).  This is so because a treating physician "is employed to cure and has a greater

25  opportunity to know and observe the patient as an individual."  *Sprague v. Bowen*,

26  812 F.2d 1226, 1230 (9th Cir. 1987).

27       Where the treating physician's "opinion is not contradicted by another doctor,

28  it may be rejected only for 'clear and convincing' reasons."  *Benton*, 331 F.3d at

7

1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons.") (italics in original).

"Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record[.]" *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725.

The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

B.   <u>Medical Assessments of Plaintiff</u>

Here, on April 20, 2008, orthopedic surgeon Augustine H. Conduah, M.D. ("Dr. Conduah") performed an orthopedic consultation of Plaintiff.  (AR at 193-98.) Dr. Conduah reported that, according to Plaintiff, "she was involved in a motor vehicle accident 15 years ago, injuring her neck and left knee" and "as a child[,] she had a congenital hip abnormality which required closed reduction of her left hip." (*Id.* at 193.)  Dr. Conduah indicated that Plaintiff "also had some sort of left knee surgery about 20 years ago."  (*Id.*)

Dr. Conduah found that Plaintiff "tends to walk with a limp, favoring the left lower extremity."  (AR at 195.)  He also noted that "[n]o assistive devices are used to ambulate."  (*Id.*)  With respect to Plaintiff's left hip, Dr. Conduah opined that "[t]here is pain with the range of motion" and Plaintiff has a "mild leg length discrepancy with her left leg appearing shorter than her right by less than [one centimeter]."  (*Id.* at 196.)

Dr. Conduah diagnosed Plaintiff with cervical sprain, and internal derangement of the left knee and left hip.  (AR at 197.)  In making Plaintiff's

1  functional assessment, Dr. Conduah explained that

2              [f]rom a functional standpoint, [Plaintiff] can lift and carry 50

3              pounds occasionally and 25 pounds frequently.  She can stand

4              and walk six hours out of an eight-hour workday.  She can sit six

5              hours out of an eight-hour workday.  She can bend, kneel, and

6              crawl frequently.  An assistive ambulatory device is not

7              medically required.  She is able to walk on uneven terrain and

8              climb ladders occasionally.  Overhead reaching would exacerbate

9              her cervical pathology, therefore, she can do this on a frequent

10             basis.  Handling, feeling and grasping can be done frequently.

11  (*Id.* at 198.)

12       Approximately four months later, between August 11, 2008 and March 6,

13  2009, Plaintiff was treated by a number of physicians at High Desert Health System

14  ("High Desert").  (AR at 282-325.)

15       On August 11, 2008, a treating physician at High Desert provided a radiology

16  consultation and diagnosed Plaintiff with "mild to moderate degenerative changes of

17  the left knee joint consistent with osteoarthritis."  (AR at 308.)

18       On September 29, 2008, a High Desert treatment note reported that Plaintiff

19  suffered from left knee pain and "sometimes [had] difficulty in walking."  (AR at

20  297.)  On the same day, Plaintiff was provided with instructions, which included

21  "physical therapy[,] prescription for walking cane and [left] knee brace."  (*Id.* at

22  296.)

23       On October 6, 2008, a treatment note reported Plaintiff "twisted [her] ankle

24  today" and diagnosed Plaintiff with an ankle sprain.  (AR at 295.)  On the same day,

25  a High Desert treating physician found "mild soft tissue swelling without fracture or

26  dislocation" in Plaintiff's right ankle.  (*Id.* at 307.)

27       On October 31, 2008, a High Desert treating physician noted Plaintiff suffered

28  from left knee pain, found Plaintiff had "mild jointline tenderness" and diagnosed

9

1  Plaintiff with knee strain.  (AR at 293.)  The treating physician prescribed Plaintiff
2  with a wrap-around hinged knee brace.  (*Id.*)

3       On January 7, 2009, a treatment note reported that Plaintiff suffered from
4  "knee pain" and left hip pain.  (AR at 289.)

5       On March 6, 2009, a treating physician at High Desert indicated that Plaintiff
6  complained of hip pain and difficulty walking.  (AR at 283.)  The treating physician
7  noted that Plaintiff had an abnormal range of motion in her left hip and suffered
8  from arthralgia.[3]  (*Id.*)  He also noted that a "workup" of Plaintiff's left hip was
9  needed.  (*Id.*)

10      C.    ALJ's Medical Assessment

11      In his decisions, the ALJ generously echoed the opinion of Dr. Conduah, *but*
12  conspicuously wanting was any explanation for brushing aside the opinion of the
13  High Desert physicians.  The ALJ stated as follows:

14           The treating records show that [Plaintiff] complains of left knee
15           and hip pain as well as tremors and that [Plaintiff] was medically
16           prescribed a cane, left knee brace, and physical therapy. . .
17           Radiographs of [Plaintiff's] left knee only showed mild to
18           moderate degenerative changes that are consistent with
19           osteoarthritis.  There are no fractures or dislocations.  In addition,
20           although [Plaintiff] had a limited range of motion in the left hip
21           secondary to pain, there were no noted scars or diagnostic tests
22           with clinical findings regarding the cause of [Plaintiff's] hip pain.
23           The consultative examiner did note that [Plaintiff's] left leg was
24           slightly shorter than her right leg by less than 1 cm.  Further,
25           although the consultative examiner noted that [Plaintiff] walked
26

27      [3]   Arthralgia is "[p]ain in a joint."  *Stedman's Medical Dictionary* 159 (28th ed.
28  2006).

1    with a limp favoring the left lower extremity, he also noted that

2    she did not require an assistive device to ambulate, was able to sit

3    comfortably, and had no difficulty from the sitting and supine

4    positions.  In addition, at the time of the consultative exam,

5    [Plaintiff] was not taking any medication for her symptoms. . . . ¶

6    As for opinion evidence, the undersigned gives the most

7    probative weight to the opinion of the consultative examiner Dr.

8    Augustine Conduah, M.D., that [Plaintiff] can perform medium

9    work because it is consistent with the record.  Dr. Conduah is an

10    orthopedic surgeon and had the opportunity to review the

11    radiographs of [Plaintiff's] left knee.  Although there was

12    evidence of osteoarthritis in [Plaintiff's] left knee, Dr. Conduah

13    opined that [Plaintiff] can stand, walk, and sit 6 hours in an 8

14    hour day; occasionally walk on uneven terrain and climb ladders;

15    frequently bend, kneel, crawl, and reach overhead.

16  (AR at 23, 34-35 (citations omitted).)

17        D.    The ALJ Improperly Evaluated the Opinion of the High Desert Treating

18              Physicians

19        Based on this record, the Court is persuaded that the ALJ erred in his

20  evaluation of the medical evidence.  Three reasons guide this Court's determination.

21        First, in his decisions, although the ALJ recited the High Desert treating

22  physicians' opinion, (*see* AR at 23-24, 34-35), he did not provide any reason for

23  disregarding it.  Instead, the ALJ simply adopted Dr. Conduah's opinion.  (*See id.* at

24  23, 35.)  By adopting Dr. Conduah's opinion, which contained contradictory

25  findings to those contained in the High Desert physicians' opinion, the ALJ

26  implicitly rejected the opinion of Plaintiff's treating physicians.  *See Smith ex rel.*

27  *Enge v. Massanari*, 139 F. Supp. 2d 1128, 1133 (C.D. Cal. 2001) (reliance on one

28  physician's opinion in making a finding, which differs from that of another

11

physician, is an implicit rejection of the latter).

The ALJ committed reversible error by failing to provide any reason, let alone a specific and legitimate one, for disregarding Plaintiff's treating physicians' opinion. *See Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987, *as amended* Aug. 4, 1988) ("We find nothing in the ALJ's decision which indicates why [the treating physician's] medical findings, reports, and opinion were disregarded. Because the ALJ did not state reasons based on substantial evidence, we reverse the decision to deny benefits.").

Second, to the extent the ALJ rejected the High Desert treating physicians' opinion based on his conclusion that "the opinion of the consultative examiner, [Dr. Conduah], that [Plaintiff] can perform medium work . . . is consistent with the record[,]" (AR at 23, 35), his assessment is impermissibly broad and conclusory and "does not achieve the level of specificity" required to justify his rejection of the opinion of Plaintiff's *treating* physicians. *See Embry v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (conclusory reason "does not achieve the level of specificity" required to justify an ALJ's rejection of a treating source's medical opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989, *as amended* Oct. 19, 1989) (ALJ's rejection of treating physician's opinion on the ground that it was contrary to the clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed."); *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) ("Merely to state that a medical opinion is not supported by enough objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.") (internal quotation marks and citation omitted).

Third, the ALJ erred in relying on Dr. Conduah's opinion to determine whether Plaintiff "require[s] an assistive device to ambulate." (AR at 23, 34-45.) The ALJ's reliance on Dr. Conduah's opinion is undermined because Dr. Conduah formed his conclusions without reviewing the treatment records from High Desert.

12

1   (AR at 193 (Dr. Conduah's consultative examination was performed on April 20,

2   2008 and indicated that "[t]here were no medical records available for review"), 308

3   (Plaintiff's first treatment note from High Desert dated August 11, 2008).)  Further,

4   substantial evidence supports the opinion of Plaintiff's treating physicians at High

5   Desert, who provided Plaintiff with instructions for "physical therapy[,] prescription

6   for walking cane and [left] knee brace," (AR at 296), and consistently recognized

7   that Plaintiff suffers from left knee and hip pain.  Thus, Dr. Conduah's assessments

8   are not supported by the medical record.

9        Defendant argues that "the medical record does not support Plaintiff's

10   assertion that any doctor determined that she could not walk at all without the cane

11   or that she needed to use it constantly" and "Plaintiff's daily activities contradict this

12   assertion."  (Def.'s Br. at 2.)  However, the ALJ did not rely on these reasons in

13   rejecting the High Desert treating physicians' opinion.  The Court's review is limited

14   to the reasons *actually* provided by the ALJ in his decisions.  *See Orn v. Astrue*, 495

15   F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in

16   the disability determination and may not affirm the ALJ on a ground upon which he

17   did not rely."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are

18   constrained to review the reasons the ALJ asserts[ and i]t was error for the district

19   court to affirm the ALJ's . . . decision based on evidence that the ALJ did not

20   discuss.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

21        Defendant also maintains that, in any event, "Plaintiff would not have been

22   disabled even had she been capable of only sedentary or light work."  (Def.'s Br. at

23   2.)

24        However, even sedentary work, which is more restrictive than light work,

25   includes occasional walking and standing.[4]  *See* 20 C.F.R. §§ 404.1567(a) &

26

27      [4]  "Sedentary work involves lifting no more than 10 pounds at a time and

28   occasionally lifting or carrying articles like docket files, ledgers, and small tools.

1   416.967(a).  Because "occasionally" means "up to one-third" of an 8-hour workday,

2   *see* Social Security Ruling ("SSR") 83-10,[5/] 1983 WL 31251, at *5, sedentary work

3   can include jobs that require nearly three hours of walking and standing.  *See id.*

4   ("Work processes in specific [sedentary] jobs will dictate how often and how long a

5   person will need to be on his or her feet[.]").

6        Under the circumstances, the Court is persuaded that, at a minimum, the

7   record is unclear regarding Plaintiff's physical limitations and the extent to which

8   Plaintiff requires the use of a cane, and the amount of time she is able to stand and/or

9   walk in an 8-hour workday.  *See Payan v. Chater*, 959 F. Supp. 1197, 1205 (C.D.

10  Cal. 1996) ("Remand is appropriate if the record is incomplete and additional

11  evidence could complete the record."); *Metaxotos v. Barnhart*, 2005 WL 2899851, at

12  *7 (S.D.N.Y. 2005) ("The appropriate remedy when faced with an ambiguous

13  finding is to remand the case to the Commissioner for clarification of the

14  ambiguity.").  Accordingly, the Court declines to find, as is suggested by Defendant,

15  that the ALJ's error was harmless.

16

17

18

19

_____

20

21  Although a sedentary job is defined as one which involves sitting, a certain amount
    of walking and standing is often necessary in carrying out job duties.  Jobs are

22  sedentary if walking and standing are required occasionally and other sedentary

23  criteria are met."  20 C.F.R. §§ 404.1567(a) & 416.967(a).

24  [5/]  "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the
    Act's implementing regulations and the agency's policies.  SSRs are binding on all

25  components of the [Social Security Administration].  SSRs do not have the force of

26  law.  However, because they represent the Commissioner's interpretation of the
    agency's regulations, we give them some deference.  We will not defer to SSRs if

27  they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246

28  F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

14

1

**VI.**

**REMAND IS APPROPRIATE**

This Court has discretion to remand or reverse and award benefits. *McAllister*, 888 F.2d at 603.  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, remand is required because the ALJ erred in failing to properly evaluate the High Desert treating physicians' opinion.  On remand, the ALJ shall reevaluate the opinion of Plaintiff's treating physicians and either credit it as true, or provide specific and legitimate reasons for any portion of their opinion that is rejected.  In addition, if necessary, the ALJ shall obtain additional information and clarification regarding Plaintiff's functional limitations.  The ALJ shall then, with the assistance of a vocational expert, determine if Plaintiff can perform other work existing in significant numbers in the national economy.

/

/

/

/

/

/

/

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

15

1    **REVERSING** the decision of the Commissioner denying benefits and

2    **REMANDING** the matter for further administrative action consistent with this

3    decision.

4

5    Dated: November 10, 2010

6

7    _____

8                                                    Hon. Jay C. Gandhi
                                                       United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28